# THE CORTEZ LAW FIRM
## Adam C. Cortez
## Attorney at Law

| | |
|---|---|
| **1202 South Alamo Street** | **305 Broadway, Suite 711** |
| **San Antonio, TX 78210** | **New York, NY 10007** |
| **(210) 273-2277 Office** | **(212) 500-3272 Office** |
| **(210) 504-1523 Fax** | **(646) 568-2416 Fax** |
| **adam@cortezlawfirm.com** | |

Admitted in Texas and New York

August 18, 2025

**VIA ELECTRONIC DELIVERY**
Honorable Arun Subramanian
United States District Judge
500 Pearl Street
New York, NY 10007

Re: *U.S. vs. Isaac Oduro Boateng*; 21 CR 263-AS.
**SUPPLEMENT/REPLY TO REQUEST FOR BAIL OR BAIL HEARING**

To the Honorable Court:

    In support of Mr. Boateng's request for bail, attached please find a copy of the Notice of Appointment from the Office of the Registrar of Companies for the Republic of Ghana. The Notice is addressed to Eric Davies Asare who is the only non-government appointed member of the three-member Committee that was established by the Ghanaian government to control and manage the two companies owned by Mr. Boateng. Mr. Asare is the General Manager of the companies that Mr. Boateng owns.

    The two companies owned by Mr. Boateng (Ice Foods Ltd and EMB Food Ltd) had Mr. Boateng and his wife, Joyce-Jocelyn Brogya Mensah as the only two Directors. After his arrest on this indictment, Mr. Boateng can no longer act as a Director, leaving his wife as the Sole Director of the Company. However, the actions of his wife as a Director, are subject to the supervision of the Interim Management Committee established by the Order of the Court in Ghana, pending the trial of this indictment.

    The other two members of the Committee that control and manage Mr. Boateng's companies pending the outcome of the instant indictment are copied on the Notice to Mr. Asare. Ferdinand D. Adadzi (Esq.) is an attorney who is the representative on the Committee who was appointed by the Office of the Registrar for the Republic of Ghana. The third member of the Committee is Kate Adompoka Atanga who was appointed by the Attorney General of Ghana. The three members oversee all aspects of Mr. Boateng's companies, which constitute all of his assets.

# THE CORTEZ LAW FIRM

The events that led to Mr. Boateng's companies being seized and to his extradition to the U.S. are as follows: 1). On June 9, 2025, Mr. Boateng was contacted by agents with the Economic and Organized Crime Office ("EOCO") to discuss issues related to payment of his Ghanian taxes (totally unrelated to the instant indictment); 2) On June 11, 2025, Mr. Boateng and his Ghanian counsel, Bobby Banson, met with the EOCO. During the interrogation on June 11, 2025, the EOCO agents asked for permission to search Mr. Boateng's business office and his home. Mr. Boateng gave consent to searches of both his home and business. The search of Mr. Boateng's home resulted in the seizure of the vehicles that were parked in front of his home; 3) Later on June 11, 2025, Mr. Boateng was told by EOCO agents that he would be detained; 4) On June 12, 2025, Mr. Boateng was released from EOCO custody and told to return to the EOCO office the following day; 5) On June 13, 2025, Mr. Boateng returned to the EOCO office for further interrogations regarding his taxes. After the interrogation ended, Mr. Boateng and his Counsel were on their way out of the EOCO offices when he was arrested by Interpol. Mr. Boateng remained in custody in Ghana until his extradition to this District on August 7, 2025; 6) On June 26, 2025, the Ghana District Court approved an agreement to establish a Committee to oversee Mr. Boateng's businesses; and 7) On July 15, 2025, the composition of that Committee was completed per the attached Notice of Appointment.

Mr. Boateng is not currently facing any charges in Ghana, but his actions in submitting to interrogation, consenting to searches, and even giving a voluntary statement to the FBI while in Ghana are not conduct that suggests that he would flee this jurisdiction. On the contrary, Mr. Boateng has been willing to cooperate with both Ghanian authorities and the FBI. Moreover, as stated in the original Request for Bail, if Mr. Boateng flees the jurisdiction, he will do so with no ability to have control of any of his assets. Here, the Ghanian government has put into place a restriction that in and of itself guarantees that Mr. Boateng has every incentive to defend this indictment and every disincentive to make any attempt to avoid it.

As soon as this Court sets a bond in this matter, the Court, through the Pre-Trial Services Office, will see firsthand how all expenditures for Mr. Boateng are processed. Whether the Court sets a bond at $500.00 or $500,000.00, I, as counsel for Mr. Boateng, will have to contact his Ghanian attorney, Bobby Banson, to let him know the bond amount set by this Court. Mr. Banson will then contact the Committee to approve the payment of the bond. The approval will occur, but the process will show that Mr. Boateng would not have the ability to use any of his assets should he flee the jurisdiction of this Court.

Defense counsel in this case have not yet been given access to discovery in this matter. For that reason, addressing some of the allegations in the government's opposition is difficult because the context of the messages and the entirety of the evidence is unknown. However, there is no evidence that Mr. Boateng had any contact whatsoever with Fred Asante in the years 2016 through the fall of 2019 because Mr. Boateng did not meet Mr. Asante until they attended the same wedding in September 2019 in Virginia. Further, as the record in Mr. Asante's case number

# THE CORTEZ LAW FIRM

1:21-cr-00088-JSR reflects, in February 2021, Mr. Asante was indicted, arrested and detained. Accordingly, the only time that Mr. Boateng could have had any communication with Mr. Asante is limited to a total of 17 months, beginning at their meeting September 2019 and ending with his detention in February 2021.

      It is noteworthy that the government has not produced any direct messages between Mr. Boateng and the Co-Defendants although it is alleged that he was "directing" the criminal activity. Moreover, other text messages between Mr. Boateng and Mr. Asante dated June 2020 were produced as evidence during the extradition process. One of those messages was mistakenly interpreted by the government as a discussion regarding a 5.4 percent money laundering fee that Mr. Boateng was receiving when in fact the discussion related to nothing more than the monetary exchange rate. In 2020, the exchange rate between the U.S. dollar and Ghanian Cedi ranged from 5.3 to 5.9. Meaning that during 2020 one U.S. dollar equaled between 5.3 to 5.9 Ghanian Cedis. There are likely other explanations that can be provided for communications allegedly made in furtherance of the instant indictment, and Mr. Boateng looks forward to receiving all the evidence in this matter so that proper explanations can be made.

      Mr. Boateng respectfully requests that he be granted Pre-Trial release on conditions set by this Honorable Court.

                                                                 Sincerely yours,

                                                                 Adam C. Cortez